| | | |
|---|---|---|
| **HENRY ALEXIS, et al.** | : | |
| | : | **Case No: 7:19-CV-10358-CS-PED** |
| **Plaintiffs** | : | |
| **v.** | : | |
| | : | |
| **COMBE INCORPORATED** | : | **Judge: Hon. Cathy Seibel** |
| | : | **Magistrate Judge: Paul E. Davison** |
| **Defendant** | : | |
| | : | |
| | : | |

## [~~AMENDED PROPOSED~~] ORDER REGARDING BURG-JFM RESOLUTION PROGRAM

This Court is advised that Combe and Counsel for all of the Plaintiffs before this Court, as well as all participating Claimants these Counsel represent, have negotiated a Master Settlement Agreement ("MSA" or "Agreement") to resolve all of their claims allegedly occurring from injuries related to use of Just for Men® products against all Combe defendants ("Defendants"). The Master Settlement Agreement is attached as Exhibit A to this Order. This Court has reviewed the Agreement and finds the terms of the Agreement to be reasonable and acceptable. It is the Court's intention to enter such Orders as are necessary to effectuate the Master Settlement Agreement and to resolve this litigation for all of the participating parties.

The Master Settlement Agreement establishes a program (the "BURG-JFM Resolution Program" or "Program") for the settlement of all claims for all individuals set out on Appendix A to the MSA. The Court Orders that copies of Appendix A shall only be retained by the Mediator and the Parties for any use related to the Program. Appendix A includes individuals who are either: (1) individuals named as Plaintiffs in a case pending in this Court; or (2) individuals

identified to Defendants in any claimant lists or injury tier spreadsheets during the Court Ordered mediation process.

All Claimants who participate in the BURG-JFM Resolution Program have submitted to the jurisdiction of this Court and shall be bound by all orders of this Court.

THEREFORE, IT IS HEREBY ORDERED THAT:

**Approval of Master Settlement Agreement and the BURG-JFM Resolution Program.** The Court approves the Master Settlement Agreement and the establishment of the BURG-JFM Resolution Program for the settlement of all claims of the Plaintiffs in this action, as well as certain other qualifying individuals as set forth in the MSA.

IT IS FURTHER ORDERED THAT:

**Appointment of Hon. Michael Reagan, Ret., as Mediator**. The Court hereby appoints Hon. Michael Reagan, Ret., to continue as Mediator in conjunction with overseeing and implementing the Agreement and the BURG-JFM Resolution Program. Judge Reagan was the Court appointed mediator involved in this resolution, and possesses the requisite skills, experience, knowledge, character, credibility, and other attributes necessary to serve in this role. The Court bestows Judge Reagan with the power to do all things necessary to facilitate the BURG-JFM Resolution Program as described in the Master Settlement Agreement, and to exercise all responsibilities, duties, and authority attributed to the Mediator as set forth in the Agreement.

IT IS FINALLY ORDERED THAT:

**Appointment of Archer Systems as Claims Administrator**. The Court is advised by the Parties that that plaintiffs' counsel has selected Archer Systems as Claims Administrator for the BURG-JFM Resolution Program pursuant to the terms of the Agreement. The Court, having reviewed the Agreement and being familiar with the duties and obligations bestowed therein on

the Claims Administrator, believes that Archer Systems is an appropriate choice. The Court hereby appoints Archer Systems as Claims Administrator for the BURG-JFM Resolution Program.

**IT IS SO ORDERED.**

Dated: _5/6/21_____          _____

# EXHIBIT A

# MASTER SETTLEMENT AGREEMENT

This Master Settlement Agreement is entered into this __29th__ day of March, 2021, by and between Combe Incorporated (including Combe Products, Inc., Combe International LLC and Combe Laboratories, LLC, and all affiliates) (collectively "COMBE") and BURG SIMPSON ELDREDGE HERSH JARDINE PC (hereinafter "BURG SIMPSON" or "Claimants Counsel") as authorized Counsel. All capitalized terms used herein shall have the meanings ascribed to them, respectively, either where they appear in this Agreement set off in parentheses and quotations and underscored, or as set forth in Article XV.

## ARTICLE I.  RECITALS

1.1     This Master Settlement Agreement ("MSA") pertains to the BURG SIMPSON Clients, which includes individuals named as Plaintiffs in *Alexis, et al. v. Combe Inc., et al.,* Case No. 7:19-cv-10358 (the "BURG-JFM Court"), and other individuals represented by BURG SIMPSON who assert claims for personal injury due to use of Just for Men hair dye products, all of whom are identified on Appendix A and Appendix B to the Settlement Term Sheet (described below).

1.2     The Parties have separately executed a Settlement Term Sheet between BURG SIMPSON and COMBE INCORPORATED, hereinafter referred to as the "Settlement Term Sheet." The Settlement Term Sheet is incorporated by reference, and its terms are part of this MSA. The Eligible Participant List, consisting of all BURG SIMPSON clients who assert claims for personal injury due to use of Just for Men hair dye products, is attached to the Settlement Term Sheet as Appendix A and Appendix B, and will be referred to as Appendix A and Appendix B throughout this MSA. The Settlement Term Sheet and Appendix A and Appendix B shall only be retained by the Settlement Administrator, Mediator and the Parties.

1.3     BURG SIMPSON has been duly authorized, as counsel representing any individual identified on Appendix A and Appendix B, to enter into this Agreement, and COMBE has agreed to settle all Claims by individuals set out in Section II(A) (the " BURG-JFM Settlement."), subject to the terms herein.

1.4     Defendants deny any liability or wrongdoing and assert that they have meritorious defenses to these lawsuits and claims. This Agreement, accordingly, will not be construed as evidence of, or as an admission by Defendants of, any fault, liability, wrongdoing, or damages whatsoever.

1.5     The Parties agree and understand that this Agreement shall not be admissible in evidence, and shall not be used, cited as authority or precedent, or relied upon in any manner in any future cases without the express approval of both BURG SIMPSON and COMBE, other than as necessary to enforce the Agreement.

1.6     All sums offered under this Agreement constitute damages on account of personal physical injuries or sickness, within the meaning of §104(a)(2) of the Internal Revenue Code.

1.7     In consideration of the Recitals, and the other considerations in this Agreement, COMBE and BURG SIMPSON hereby agree as follows:

1

# ARTICLE II.        PROGRAM ENROLLMENT

## A.        BURG SIMPSON Claimant List

2.1        The BURG SIMPSON Claimant List ("Claimant List") was created and attached to the Settlement Term Sheet as Appendix A and Appendix B.  A copy will be retained by the Parties, the Settlement Administrator and the Mediator.

## B.        Eligible Enrollees

2.2        All Claimants on Appendix A and Appendix B are "Eligible Enrollees" in the BURG-JFM Settlement.

2.3        Those Eligible Enrollees who timely submit their completed Claims Package become finally enrolled in the BURG-JFM Settlement pursuant to the provisions of this Article II and shall thereby become Enrolled Participants.

## C.        Enrollment Procedures for Eligible Enrollees

2.4        Eligible Enrollees who wish to participate in the Settlement must submit the "Notice of Intent to Opt In Form for Eligible Participant" contained in Appendix C to this MSA, which shall contain only the Eligible Enrollee's name, social security or federal identification number, address and signature indicating agreement of the Eligible Enrollee to participate in the Settlement.

2.5        Submission of a Notice of Intent to Opt In Form (i) is irrevocable; (ii) binds the Claimant submitting the form to the terms and conditions of this Agreement; and (iii) constitutes affirmative acceptance of the jurisdiction of the Settlement Administrator and the BURG-JFM Court for all matters and decisions relative to this Agreement.

2.6        All Eligible Claimants who properly and timely submit a Notice of Intent to Opt In Form are Enrolled Participants, and must submit a Claim Package on or before the Claim Package Deadline for Enrolled Participants.

## D.        Participation is Irrevocable And All Determinations Are Final and Binding

2.7        After submitting the Notice of Intent to Opt In Form, all Participants may only pursue their claims through the Settlement and may not pursue their claims in any court of law or other proceeding.

2.8        All Enrolled Participants with a pending lawsuit agree: (1) to have their claims in any lawsuit against COMBE dismissed with prejudice; (2) to execute a Release of all claims against COMBE and its insurers; and (3) agree that unless Combe exercises its Walk Away Rights as set forth in Article V they shall not be entitled to pursue claims of any kind against COMBE in connection with the Just For Men® products.

2.9        All Enrolled Participants who are not a party to a lawsuit agree that they shall not be entitled to pursue any claim of any kind against COMBE in connection with the Just For Men® products unless COMBE exercises its Walk Away Rights as set forth in Article V.

2.10    COMBE agrees that no Stipulations of Dismissal shall be docketed prior to the satisfaction of the agreed upon Participation Thresholds and the deposit of Settlement Funds in the QSF by or on behalf of COMBE.

### E.    Provision of Opt In Forms to COMBE and BURG SIMPSON

2.11    The Settlement Administrator shall make the Notice of Intent to Opt In Forms for Eligible Participants (i.e. all persons listed on Appendix A and Appendix B) that it receives pursuant to this Article II available to the Parties upon request by either Party.

### F.    Other Obligations of Enrolling Counsel

2.12    Claimants' Counsel represent and warrant that all clients they currently represent who allege, alleged, could allege, seek to allege or sought to allege any Released Claims against COMBE or any Released Parties are included in Appendix A and Appendix B.

### G.    COMBE's Reliance

2.13    Claimants' Counsel understand and acknowledge that COMBE has relied upon the representations and warranties of Claimants' Counsel in this MSA Section III in agreeing to pay the Final Aggregate Settlement Amount and as a pre-condition to entering into this Aggregate Settlement.  The Parties agree that the representations and warranties of Claimants' Counsel in this Section III are material terms to this MSA and this Aggregate Settlement.

## ARTICLE III.    SCHEDULE OF DEADLINES

3.1    BURG SIMPSON and COMBE agree that Settlement Participants shall be bound to abide by the deadlines set forth in Appendix D to this Agreement ("Schedule of Deadlines").

3.2    The Schedule of Deadlines shall apply from the Execution Date of this Agreement, and govern the time and date by which Eligible Participants must submit the Claims Package.

3.3    It is specifically understood that these deadlines may be extended by mutual agreement of BURG SIMPSON and COMBE.

## ARTICLE IV.    ELIGIBLE CLAIMS

4.1    Only "Eligible Claims" may be compensated under the terms of this Settlement. An Eligible Claim requires the following:

    (A)    The Claimant is an Enrolled Participant;

    (B)    The Claimant has timely submitted a complete Claim Package as set forth in Article VI;

    (C)    The Claimant meets the threshold criteria for claim consideration of an injury contemporaneous to use of a Just For Men® product ("JFM"); and

    (D)    The Claimant used JFM to dye hair on his scalp, beard, sideburns or mustache.  Use of JFM for any other purpose is not a compensable claim.

4.2    All Eligible Enrollees have previously established the requirements of 4.1(C) and 4.1(D), which was confirmed through the mediation between the BURG SIMPSON Claimants and COMBE held on January 19, 20 and 21, 2021.

## ARTICLE V.    PARTICIPATION REQUIREMENT AND TERMINATION RIGHT

### A.    BURG SIMPSON Efforts

5.1    BURG SIMPSON will use their best efforts to achieve sufficient participation to meet the participation benchmarks necessary to effectuate the Settlement.

### B.    COMBE's Walk Away Right

5.2    COMBE shall have the option, in its sole discretion, to terminate the Settlement and this Agreement if, but only if, certain thresholds of participation ("Required Participation Thresholds") in the Settlement Agreement are not met, as set forth in Paragraph 5.3 below (the "Walk Away Right").

### C.    Required Participation Threshold

5.3    COMBE's Walk Away Right may be overcome only if the following Required Participation Threshold is satisfied by participation of the following levels of Participants:

(A)    **Appendix A Section I and Appendix B Section I Participation:** No less than one hundred percent (100%) participation of all individuals who appear on Appendix A Section I and Appendix B Section I.

(B)    **Appendix A Section II and Appendix B Section II Participation:** No less than ninety-five percent (95%) participation of all individuals who appear on Appendix A Section II and Appendix B Section II, combined.

5.4    For purposes of determining whether the foregoing Required Participation Threshold has been met:

(A)    100% of Section I of Appendix A and Section I of Appendix B.

(B)    For Section II Participation of Appendix A and B combined: The denominator is 144, which represents the total number of individuals in Appendix A Section II (141) plus the individuals in Appendix B Section II (3).

(C)    The numerator will include only the total of the individuals on Appendix A Section II and Appendix B Section II who successfully submit a Claims Package.

5.5    The Settlement Administrator shall make the initial Participation Threshold determination pursuant to Paragraphs 5.3 and 5.4 above. Such determination shall be made no

later than twenty (20) days following the claims package deadline. If there is any dispute among the Parties regarding the Participants to be included in the participation analysis, the Parties shall first seek to reach agreement. If no agreement is reached between the Parties, either Party may appeal the Settlement Administrator's determination to the Mediator, within 5 days of such determination. The Mediator will resolve the dispute and make the final determination within five (5) days. The Mediator shall have authority to assess costs or other penalties (including interest) if he finds that a party lacks good faith in disputing the eligibility of a Settlement Participant.

5.6 COMBE may exercise the Walk Away Right, if available, on or before 11:59 p.m. C.T. on the 10th day following the determination of the Participation Thresholds, or the decision of any appeal under Paragraph 5.5 above, whichever is later.

5.7 COMBE shall exercise its Walk Away Right by emailing notice to BURG SIMPSON as directed in Section XIV(A) herein.

**D. Consequences of Exercise of Walk Away Right**

5.8 Upon exercising the Walk Away Right, this Agreement becomes null and void. Neither COMBE nor its insurers shall not be obligated to deposit any Settlement Funds into the Qualified Settlement Fund, and all Releases and Stipulations of Dismissal or Motions to Dismiss shall be electronically marked "CANCELLED - NULL AND VOID" by the Settlement Administrator and returned to BURG SIMPSON.

5.9 In the event that COMBE exercises the Walk Away Right, the Statute of Limitations applicable to any Participant shall be deemed to have been tolled from October 22, 2020, until a period expiring sixty (60) days after COMBE serves its Walk Away Right notice. Nothing in this provision shall be interpreted to revise or render legally viable a Claim that was time-barred under applicable law prior to October 22, 2020.

5.10 In the even that a Eligible Claimants fails to opt-in to the Settlement, the Statute of Limitations applicable to their claims shall be deemed to be tolled from October 22, 2020 until a period expiring sixty days after the final deadline for participation in the Settlement as set forth herein. Nothing in this provision shall be interpreted to revise or render legally viable a Claim that was time-barred under applicable law prior to October 22, 2020.

**ARTICLE VI.      CLAIM PACKAGE SUBMISSION AND REVIEW**

**A. Claim Package Deadline**

6.1 Enrolled Participants must submit their Claim Packages by the Claim Package Deadline, which is set at 120 days from the Court's approval of the Agreement.

6.2 The Claim Package Deadline may be extended for a period of 30 days, by request to the Settlement Administrator upon agreement of both BURG SIMPSON and Counsel for Defendant. The final Claim Package Deadline shall be extended 30 days for all Program Participants or Enrolled Program Participants if any extension is granted.

6.3 Persons who did not use JFM may not submit a Claim Package; however, the claims of all persons on Appendix A and Appendix B (i.e. all Eligible Enrollees) were reviewed by

COMBE during the mediation held on January 19, 20 and 21, 2021 and COMBE agrees that they all qualify to submit a Claim Package.

**B.    Complete Claim Package Requirements for  Participants**

6.4    A complete Claim Package for a Program Participant must include and is limited to the following material submitted on or before the Claim Package Deadline:

(A)    An Opt In Form;

(B)    An executed Release in the form of Appendix G for all  Participants;

(C)    A Stipulation of Dismissal or a Stipulation of Termination of All Claims in the form as provided by the Settlement Administrator.

**C.    Claim Package Submission**

6.5    Claim Packages must be submitted to the Settlement Administrator on or before the applicable Claim Package Deadline.

**D.    Consideration of Claim Packages**

6.6    The responsibility to provide a complete Claims Package is that of the Participants, along with their counsel.

6.7    The Settlement Administrator shall upon reasonable request provide updates to COMBE and BURG SIMPSON as to the submission, review and approval process.  COMBE or BURG SIMPSON may request copies of any Claim Package or any other documentation submitted with such Claim Package from the Settlement Administrator.

**ARTICLE VII.    SETTLEMENT ADMINISTRATOR**

**A.    Settlement Administrator Selection**

7.1    This Agreement is a private agreement.

7.2    BURG SIMPSON has selected Archer Systems to be the Settlement Administrator for the BURG-JFM Settlement.

7.3    The fees of the Settlement Administrator shall be paid by BURG SIMPSON

7.4    Any successor or supplement to the initial Settlement Administrator shall fulfill the same functions from and after the date of his succession and shall be bound by the determinations made by his predecessor(s) to date.

**B.    Settlement Administrator Liaisons**

7.5    BURG SIMPSON and COMBE each designate the following liaisons for communicating with the Settlement Administrator regarding the Settlement and answering any

questions that the Settlement Administrator may have with respect to the interpretation of any provision of this Agreement ("Settlement Administrator Liaisons"):

COMBE:

Stephen G. Strauss
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
sgstrauss@bryancave.com
Phone: 314-259-2444

BURG SIMPSON:

Kenneth Daly
BURG SIMPSON ELDREDGE HERSH JARDINE PC
201 East 5th Street, Suite 1340
Cincinnati, Ohio 45202
Phone: 513.852.5600
Fax: 513.852.5611
KDaly@burgsimpson.com

The identity of the Liaisons may be modified at the discretion of either Party with reasonable notice.

## C. Responsibilities and General Authority

7.6    The Settlement Administrator must carry out the responsibilities for claim administration and review set forth in this Agreement as well as any additional responsibilities, if any, set forth in any subsequent amendments to this Agreement.

7.7    The Settlement Administrator shall have the authority to perform all actions, to the extent not expressly prohibited by, or otherwise inconsistent with, any provision of this Agreement, deemed by the Settlement Administrator to be reasonably necessary for the efficient and timely administration of this Agreement.  The Settlement Administrator is permitted to serve as the QSF Administrator under the terms of the Qualified Settlement Fund Agreement, if approved by the Court.

7.8    The Settlement Administrator may create administrative procedures, supplementary to (and not inconsistent with) those specified herein or in the Appendices hereto, that provide further specific details about how the Program is to be administered, and/or other aspects of the Settlement; provided, however, that such procedures comply, or otherwise are not in conflict, with the terms of this Agreement, and to which BURG SIMPSON and COMBE agree.

7.9    Without limitation of the foregoing, the Settlement Administrator will:

(A)    review and make determinations of whether a Claimant's Claim Package is complete in accordance with the provisions of Paragraphs 6.4;

(B)    provide notice of any Claimant's Claim Package deficiencies and allow the Claimant to cure the deficiency prior to the expiration of the Claims deadline, or within fifteen days after the expiration of the Claims deadline.

7.10    Without limitation of the foregoing, the Settlement Administrator will make the initial determination regarding Eligible Enrollees from Appendix A and Appendix B for purposes of determining the Required Participation Threshold pursuant to Paragraph 5.4.

7.11    The Settlement Administrator, the QSF Administrator, and all Participants and counsel shall cooperate with COMBE in providing to COMBE any information that is necessary to comply with reporting obligations under the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA"), or other applicable laws.

### D.    Liability of Administrative Personnel

7.12    No Settlement Administrator, or employee or agent of any Settlement Administrator, shall be liable to any Claimant, Eligible Enrollee, Participant, or their respective counsel for his acts or omissions, or those of any agent or employee of any Settlement Administrator, in connection with the Settlement except, with respect to each such Person, for such Person's own willful misconduct.  Nothing in this Section confers on any Claimant, Eligible Enrollee, Participant, or their respective counsel any privity of contract with, or other right to institute any action against, any Settlement Administrator.

### E.    Method of Notification

7.13    All notifications required to be sent by the Settlement Administrator under this Agreement shall be provided by a method selected by the Settlement Administrator as the most efficient.

### F.    COMBE/BURG SIMPSON Audit Right

7.14    In accordance with the terms of this Section, COMBE and BURG SIMPSON shall each have a limited right, at each's own expense, to itself conduct, or have conducted by the Settlement Administrator or an independent auditor, audits to verify Claims submitted by Program Participants if the audit is approved by the Mediator.

7.15    Claim Packages may only be selected for audit under the following circumstances:

(A)    If the Settlement Administrator, COMBE, or BURG SIMPSON reasonably believe that the forms in the Claim Package have been falsified or are otherwise not authentic, such Claim Package may be selected for audit by the Settlement Administrator, COMBE, or BURG SIMPSON, subject to approval of the audit by the Mediator. Audits shall not be conducted to contest eligibility, and the Mediator shall not approve audits without the requisite showing as set out herein.

7.16    If COMBE or BURG SIMPSON conduct audits approved by the Mediator pursuant to Paragraph 7.15(A), or engage an independent auditor to conduct such audits, the Party conducting the audit shall notify the Settlement Administrator and the other Party and shall specify

the Claim Packages subject to audit  To the extent the Settlement Administrator initiates audits pursuant to Paragraph 7.15(A), or is asked to perform audits pursuant to Paragraph 7.15(A) for COMBE or BURG SIMPSON, the Settlement Administrator will provide notice to the Parties (or the non-requesting Party, as applicable) and shall specify the Claim Packages subject to audit.  The party requesting the audit shall pay for the costs of the audit.

7.17    With respect to Claim Packages which are selected for audit:

(A)    The Settlement Administrator or the Party requesting the audit may require that the relevant Program Participant provide it with such other relevant records or other documentation within the Program Participant's (or their counsel's) custody, possession, or control as may reasonably be  needed to establish the validity of their signatures.

(B)    If the Program Participant fails or refuses to provide reasonably requested documentation related to the verification of their signature, after being afforded an adequate opportunity to do so, then Paragraph 7.19 (A) and (B) shall be applied to such Program Participant and their Claim.

7.18    If following completion of its audit of a Claim Package, the Settlement Administrator, COMBE or BURG SIMPSON is of the view that any reasonable indicia exists of deception, dishonesty, or fraud relating to any Claim Package, COMBE or BURG SIMPSON, as the case may be, may petition the Mediator under seal, with copies being provided to Program Participant's counsel and COMBE's counsel or BURG SIMPSON (depending on who may file) pursuant to Paragraph 7.19.  Any ruling of the Mediator with respect to the Program Participant's claim is a final decision and is not appealable.

7.19    Without limitation of Paragraph 7.18 and any term in this Agreement to the contrary notwithstanding, in the event that the Mediator, upon motion by COMBE or BURG SIMPSON, determines that a Program Participant, has used deception, dishonesty, or fraud in submission of his Claims Package:

(A)    such Program Participant's Claim shall be denied and such Program Participant immediately shall cease to have any further rights under the Program, but such Program Participant's Stipulation of Dismissal and Release (if applicable) shall be delivered to COMBE if not previously delivered (and, without limitation, COMBE shall be free to file or cause to be filed such Stipulation of Dismissal and/or Release in any relevant action or proceeding);

(B)    the amount of the Gross Settlement Allocation for each of such Program Participant shall be returned to COMBE and/or its insurers by the QSF Administrator, and if applicable, each such Program Participant shall repay to the QSF any Settlement Payment previously paid to or with respect to such Program Participant (and any such repayment of such Settlement Payment in whole or in part shall be disregarded for purposes of Article VIII); and

7.20    All audits shall be initiated in good faith and not create any delay in processing or payment of any other Claimant.

# ARTICLE VIII.    **MEDIATOR**

## A.    **Mediator Appointment**

8.1    For the sake of uniformity and efficiency, BURG SIMPSON selects Hon. Michael Reagan, the Court appointed Mediator, to act as Mediator in this private agreement. COMBE and BURG SIMPSON agree to privately appoint Hon. Michael Reagan as Mediator for the BURG-JFM Settlement, for the purpose of determination of the Final Aggregate Settlement Amount in accordance with the Settlement Term Sheet and Master Settlement Agreement, for issuance of the Final BURG-JFM Settlement Participant List, and any actions required in Article VII.

## B.    **Unresponsive or Unresolved Third-Party Claimant Disputes**

8.2    In the event that a Program Participant and their Counsel have unresponsive or unresolved Potential Third-Party Claimants, after documenting good faith efforts to resolve any such claims, they may request that the Mediator handle the resolution of the issues. The Mediator will then (a) review the efforts of Program Participant and their counsel, (b) conduct hearings among the affected parties, and (c) recommend to the BURG-JFM Court that a show-cause order should be issued regarding the disputed interests, disbursement of the Settlement Funds, or any other relief as the Mediator deems appropriate.

## C.    **Calculation of the Final Aggregate Settlement Amount**

8.3    Within 30 days of Court approval of this Agreement the Mediator shall be provided with a confidential list containing a claim valuation for each individual on Appendix A and Appendix B. This list will be used by the Mediator to make any adjustments to the Gross Settlement Amount due from COMBE and calculate any reduction related to individuals on Appendix A and Appendix B who do not appear on the Final BURG-JFM Settlement Participant List, in accordance with the Settlement Term Sheet.

8.4    If the Release Thresholds are met, but less than 100% of all BURG SIMPSON Claimants on Appendix A and Appendix B provide releases, or if the Release Thresholds are waived by COMBE, the Gross Maximum Settlement Amount shall be reduced by the Gross Settlement Allocation Amount for each Non-releasing Claimant. The total of the gross allocations of all non-releasing claimants shall be deducted from the Gross Maximum Settlement Amount, to determine the Final Gross Settlement Amount to be paid by COMBE. The Parties agree that Mediator Hon. Michael Reagan shall be provided a list of the Gross Settlement Allocations. Judge Reagan shall confirm participation in the BURG-JFM Settlement, and shall calculate the Final Gross Settlement Amount to be paid by COMBE, by deducting the amounts allocated to any non-participants. Judge Reagan shall provide that calculation to the parties and the QSF Administrator, along with the Final BURG-JFM Settlement Participant List. If the Final Gross Settlement Amount, calculated by Judge Reagan, owed by COMBE exceeds the amount that COMBE has deposited into the Qualified Settlement Fund, the QSF Administrator shall refund the difference to COMBE and/or its insurers within 30 days.

8.5     No Participant shall be entitled to any Settlement Amount other than in accordance with the terms of this Agreement, nor shall any Participant be entitled to pursue any claim for any other injury allegedly resulting from the use of JFM. Participants disclaim any claim to receive any punitive, or exemplary, or damages for economic damages, damages for any alleged fraudulent actions, or damages for any alleged violation of any federal or state statute. No payment made hereunder is or shall be deemed to be attributable to punitive or exemplary damages.

## ARTICLE IX.          FUNDING OBLIGATIONS

### A.     Settlement Funds

9.1     Subject to the Walk Away Right, as set forth in Article V, COMBE and its insurers shall deposit the Maximum Settlement Amount (the "Settlement Payment") into the Qualified Settlement Fund (also referred to herein as the "QSF") no later than 30 (thirty) days from the date the Release Thresholds are either met or waived by COMBE in accordance with this MSA.

9.2     If the Release Thresholds are met, but less than 100% of Eligible Claimants opt to participate, or if COMBE waives the Release Thresholds with the consent and approval of its insurers, and COMBE and/or its insurers have already paid the Maximum Settlement Amount into the QSF, COMBE and/or its insurers shall be entitled to reimbursement of excess funds attributable to the claims of non-participating claimants. The difference between the Maximum Settlement Amount and the Final Gross Settlement amount as determined by the Mediator, shall be returned to COMBE and/or its insurers within 30 (thirty) days by the QSF Administrator.

9.3     The QSF Administrator, after receiving a Payment List from the Settlement Administrator, is responsible for distributing each Participant's Settlement Payment from the QSF. COMBE and its insurers shall be provided a copy of the Gross Settlement Payment allocated to each participant.

9.4     Any term of this Agreement, or of the Qualified Settlement Fund Agreement, to the contrary notwithstanding, in no event shall COMBE and its insurers have any obligation to make payment of the Settlement Funds into the Qualified Settlement Fund unless and until (i) the Qualified Settlement Fund shall have been duly approved by the BURG-JFM Court, and (ii) the Release Thresholds have been met, or waived by COMBE with the consent and approval of its insurers.

9.5     Any term of this Agreement, or of the Qualified Settlement Fund Agreement, to the contrary notwithstanding, neither BURG SIMPSON, the Participants, the Mediator, the Settlement Administrator, the QSF Administrator, nor any other Person is entitled under this Agreement or the Qualified Settlement Fund Agreement to collect any amount from any of the Defendants or any other Released Persons other than from COMBE pursuant to COMBE's express obligations to only make a payment into the Qualified Settlement Fund . For the avoidance of doubt, neither COMBE nor any other Released Persons shall have any obligation to pay (or to make any payment on account of), or reimburse, any Persons for any attorneys' fees or costs or expenses incurred by any Claimant in connection with the Settlement , the Settlement Administrator, the QSF, the Lien Administrator, or the Mediator. Released Persons also shall have no responsibility for the management of the Qualified Settlement Fund or any Liability to any Persons arising from the handling of Claim Packages by the Settlement Administrator or appeals taken by Participants.

## B. Qualified Settlement Fund

9.6     In accordance with the terms of this Agreement, any Settlement Funds shall be deposited into the Qualified Settlement Fund and shall remain the property of the Qualified Settlement Fund. The Settlement Funds within the Qualified Settlement Fund will be held in a fiduciary capacity. The Qualified Settlement Fund shall comply with the Treasury Regulations Section 1.468B-1 et seq. regarding taxation and tax reporting obligations. The Qualified Settlement Fund shall be deemed to be in the custody of the BURG-JFM Court. The Qualified Settlement Fund shall remain subject to the jurisdiction of the BURG-JFM Court until such Settlement Funds are distributed. The Parties agree that the funds deposited to the QSF are unallocated at the time of deposit, and that disbursements for expenses shall be allocated among the Qualified Program Participants by BURG SIMPSON.

9.7     COMBE and BURG SIMPSON wish to have the Qualified Settlement Fund maintained in as secure a manner as possible so that the Settlement Funds will be available to be paid to those who qualify for a Settlement Payment under the Program. BURG SIMPSON will select an experienced financial institution within seven (7) days of the Execution Date. This designated financial institution shall hold the Settlement Funds. BURG SIMPSON shall move the BURG-JFM Court for approval of the Qualified Settlement Fund Administrator.

9.8     BURG SIMPSON is solely responsible for securing the QSF Administrator's execution and delivery of the Qualified Settlement Fund Agreement and such Person's consent to the jurisdiction of the BURG-JFM Court, acknowledging that the chosen financial institution and the QSF Administrator alone have the obligation to manage the Settlement Funds. Its management shall thereafter be subject to review by the JFM Court.

9.9     COMBE shall in no way be responsible for the expenses of the QSF Administrator or the administration of the Qualified Settlement Fund. COMBE shall in no way be associated with the administration of the Qualified Settlement Fund or be liable in respect of any dispute between or among any Program Participants and their respective counsel in respect of any costs, expenses, legal fees, or litigation costs to be deducted from the Qualified Settlement Fund.

## C. Tax Treatment of the Qualified Settlement Fund

9.10    Treatment. To the fullest extent allowable under applicable law, the Qualified Settlement Fund shall be treated as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1. The QSF Administrator and, as required, BURG SIMPSON, shall timely make such elections as are necessary or advisable to carry out the provisions of this Section, including the "relation-back election" as defined in Treasury Regulation §1.468B-1, back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulation. It shall be the sole responsibility of the QSF Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

9.11    Tax Returns. For the purpose of Section 468B of the Internal Revenue Code, the "administrator" shall be the QSF Administrator. The QSF Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Qualified Settlement Fund and the amounts held in the Qualified Settlement Fund including the returns described in Treasury Regulation §1.468B-2(k)(l). Such returns (as well as the election described

in Section 468B) shall be consistent with Section 468B and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties, or tax detriments) on the income earned by the Qualified Settlement Fund shall be paid exclusively out of the Qualified Settlement Fund, in accordance with Section 468B.

9.12    Taxes and Tax Expenses.  All (i) federal, state, or local taxes (including any estimated taxes, interest or penalties, or tax detriments) arising with respect to the income earned on or by the Qualified Settlement Fund, including any taxes, interest penalties, or tax detriments, that may be imposed upon Defendants with respect to any income earned on or by the Qualified Settlement Fund for any period during which the Qualified Settlement Fund (or any portion thereof) does not qualify as a "qualified settlement fund" for federal or state income tax purposes (hereafter referred to as "Taxes"), and (ii) expenses and costs incurred in connection with the administration of tax matters for the Qualified Settlement Fund and the operation and implementation of this Section (including expenses of tax attorneys or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Section) (hereinafter referred to as "Tax Expenses"), shall be paid exclusively out of the Qualified Settlement Fund.  The QSF Administrator shall notify BURG SIMPSON and COMBE in writing of the fact and amount of any such payment of Taxes or Tax Expenses out of the Qualified Settlement Fund (and any withholding pursuant to this Section).

9.13    Cooperation.  BURG SIMPSON and COMBE hereto agree to cooperate with the QSF Administrator, Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

## ARTICLE X.    DISMISSALS, DISCLAIMERS, AND RELEASES

### A.    Dismissals

10.1    Following the payment by COMBE and its insurers of the Settlement Payment into the Qualified Settlement Fund, the Defendants are entitled to dismissal with prejudice of the Claims of all enrolled JFM Court Claimants, and all enrolled Participants without filed cases in accordance with the following timelines:

> (A)    For Participants who are determined by the Settlement Administrator to have Complete Claims Packages, and who appear on the Final BURG-JFM Settlement  Participant List issued by the Mediator, COMBE may file the Stipulation at any time following the fifteenth (15) day after the Settlement Payment is made into the QSF by COMBE.

### B.    Releases

10.2    In summary and as fully reflected in the Releases, as consideration for COMBE's agreement to deposit Settlement Funds pursuant to Article IX above, Participants, individually and for their heirs, beneficiaries, agents, estate, executors, administrators, personal representatives, successors and assigns, release and forever discharge the Released Persons from all Settled Claims, and further agree and covenant not to sue Released Persons for any Settled Claims.  Without limitation, COMBE shall be free to file or cause to be filed the Releases in any relevant action or proceeding.

### C.    Unknown Facts

10.3    Participants shall agree, and by executing the Releases do agree, that the Releases are intended to and do cover any and all losses, injuries, damages and claims of every kind and nature whatsoever, whether direct or indirect, known or unknown, and suspected or unsuspected, unless specific claims are retained in writing in any individual Release, as separately agreed to by COMBE.

10.4    Participants shall acknowledge, and by executing the Releases do acknowledge, that they may hereafter discover facts different from, or in addition to, those which they now know to be, or believe to be, true with respect to their alleged injuries, losses and claims.  Participants shall acknowledge, and by executing the Releases do acknowledge, that they may learn of additional facts as those facts relate to JFM and the Released Persons' activities as those facts relate to JFM.

10.5    Participants shall agree, and by executing the Releases do agree, that the Releases, and the specific releases contained therein, shall be and remain effective in all respects, notwithstanding such different or additional facts and the subsequent discovery thereof.

10.6    Participants shall, and by executing the Releases do, expressly waive any and all rights they may have under any statute, code, regulation, ordinance or the common law, which may limit or restrict the effect of a general release as to claims, including claims that Participants do not know or suspect to exist in their favor at the time of the Releases.  Specifically, Participants shall acknowledge, and by executing the Releases do acknowledge, that they have been advised by their attorneys concerning, and are familiar with, the California Civil Code Section 1542, and Participants shall, and by executing the Releases do, expressly waive any and all rights under California Civil Code Section 1542 and under any other federal or state statute or law of similar effect.

## ARTICLE XI.    COURT APPROVAL AND OTHER DOCUMENTATION

### A.    Survival Claims, Probate, Claim Involving Minors

11.1    If required by applicable state law, a Participant's counsel or a Person authorized by a Participant's counsel will seek court approval of the settlement of the case brought on behalf of a decedent or others authorized under applicable state law to advance survival claims. Participants' counsel will assume responsibility for all necessary filings relating to notice and approval of the settlement and the Participants will be responsible for all associated costs and expenses.

11.2    If required by applicable state law, a Participant's counsel or a Person authorized by a Participant's counsel will seek court approval of the settlement of any claim or case brought on behalf of a minor.

11.3    Participants' counsel will assume responsibility for all necessary probate and guardianship filings, all filings relating to court approval of settlement, and all issues or rulings arising therefrom or related thereto.

### B.    Other Documents

11.4    COMBE, Participants, and their counsel if represented, agree to cooperate in acquiring or executing any other documents necessary to finalize an individual Participant's settlement.

## ARTICLE XII.    LIENS

### A.    Medical Bills, Liens, and Other Potential Rights for Reimbursement

12.1    BURG SIMPSON has selected Archer to be the Lien Resolution Administrator for this litigation. Archer shall assist Participants in resolving liens that are or may be asserted by Governmental Payors or asserted by Private Payors against Settlement Payments made to Participants, and to provide assurances to COMBE that such Liens have been resolved prior to Settlement Payments.

12.2    All parties agree a Qualified Protective Order ("QPO") should be requested and issued allowing Archer to serve as the agent for all Participants. This QPO will be broad enough to allow Archer to perform its function as Lien Resolution Administrator in lieu of obtaining individual HIPAA authorizations.

12.3    All costs of the Lien Resolution Administrator will be paid from the QSF, and then apportioned among Participants.

### B.    Responsibility for Identification, Notification, and Satisfaction of Insurer, Healthcare Provider or other Liens, Claims, Subrogated Rights or Obligations

12.4    Each Participant agrees that COMBE bears no responsibility for resolution of claims asserted by actual or potential insurers and all known or unknown third-party claimants with subrogation or reimbursement interests related to the released injuries (pursuant to any applicable state law or contractual terms) that are not Governmental Payors (collectively, "Potential Third-Party Claimants"). Each Program Participant represents and warrants that they will bear responsibility for claims asserted by any such Potential Third-Party Claimants.

12.5    Each Program Participant agrees it is their sole responsibility to satisfy or otherwise resolve any and all valid and enforceable claims asserted by Third-Party Claimants and further agrees that the Released Persons shall have no responsibility for satisfaction of the same.

12.6    Each Participant shall indemnify, repay and hold the Released Persons harmless from any and all valid and enforceable claims held by Third-Party Claimants, whether existing as of the date of becoming a Participant or arising thereafter. This includes payments of all fees and litigation expenses.

12.7    If the Settlement Administrator, Mediator or COMBE is or becomes aware of Third-Party Claimants, it may provide notice of those to the Lien Resolution Administrator. No Settlement Payment shall be made without the Lien Administrator's approval with respect to all valid and enforceable identified liens, except at provided in Section 12.8.

### C.    Procedure Regarding Payments by Governmental Payors

12.8    With respect to potential payments made on a Participant's behalf by Medicare or Medicaid; a Medicare or Medicaid intermediary or carrier; any other federal or state government,

agency or entity; or any other entity operating under contract with any of the previously mentioned entities (collectively "Governmental Payors"), then as a CONDITION PRECEDENT to the distribution of any Settlement Payment from the Qualified Settlement Fund to the Participant, each Participant and their counsel agree as follows:

### 1. Identification of Governmental Payors

12.9    Each Participant agrees it is their sole responsibility, assisted by their counsel , to identify to the Settlement Administrator and COMBE every Governmental Payor that may have made any payments on behalf of such Participant in any way related to such Participant's alleged use of JFM from the time the Participant alleges he first suffered injury from the alleged use of JFM through the Execution Date.   The Lien Resolution Administrator shall assist in this identification process.

### 2. Mandatory reporting obligations under MMSEA and State Medicaid Programs

12.10   *Medicare*: The Lien Administrator  shall provide COMBE with any information necessary for COMBE to meet its mandatory reporting obligations to the Center for Medicare & Medicaid Services ("CMS") as mandated by Section 111 of the MMSEA.  Any Participant who was or is a Medicare beneficiary will execute and provide the information requested by the Lien Administrator.

12.11   *Medicaid and other Governmental Payors*: Participants assisted by their counsel further shall provide COMBE with any information necessary for COMBE to meet any mandatory reporting requirements specific to each states' Medicaid or other governmental agency reporting and reimbursement laws and regulations.  Any Participant who was or is a Medicaid beneficiary will execute and provide the information and forms requested in the Medicare/Medicaid Addendum and Release as provided by the Settlement Administrator.

### D.    Notice of Settlement

12.12   Each Participant assisted by their counsel shall provide the Settlement Administrator and COMBE's counsel proof that (i) each Governmental Payor identified pursuant to Paragraphs 12.1 and 12.5 has been notified that a claim related to the Participant's alleged use of JFM has settled; and (ii) requesting a written response indicating whether each Governmental Payor holds any interest, including Liens and subrogation interests, related in any way to such Participant's alleged use of JFM and the claimed amount of any such interest.  Proof of this notification can be made in the form of an affidavit as many programs will be noticed in bulk or using spreadsheets.

### E.    Satisfaction of Governmental Payors' Interests

12.13   Each Participant assisted by their counsel shall provide to COMBE, through the Lien Resolution Administrator, written documentation or other proof, such as an affidavit, demonstrating that each Governmental Payor identified pursuant to Paragraphs 12.1 and 12.5 either:

(A)    holds no interest, including any Liens, in the Settlement Payment;

(B)     expressly releases any and all entities from any liability whatsoever for any interest, including any Liens, in the Settlement Payment;

(C)     agrees any interest, including any Liens, in the Settlement Payment has been finally and completely satisfied; or

(D)     has reached a binding agreement with the Participant setting forth in detail a specific dollar amount or percentage of the Settlement Payment that the Governmental Payor agrees is the maximum amount it will seek from any and all Persons to fully and finally resolve any interest, including any Liens, in the Settlement Payment.

12.14   For the avoidance of doubt, the CONDITION PRECEDENT in this Section is not a CONDITION PRECEDENT to COMBE's funding obligations into the Qualified Settlement Fund under Paragraphs 12.1 and 12.5, but is only a CONDITION PRECEDENT to the distribution of the Participant's Settlement Payment from the Qualified Settlement Fund to the Participant. Provided however, that the Settlement Administrator may, in his discretion, authorize a partial payment with appropriate withholds if undue delay occurs in resolving Government Payor claims.

## F.     Attorney Liens

12.15   Each Participant shall represent and warrant that all liens referenced in Paragraph 12.4 and all legal expenses, bills, costs or contingency fee agreements resulting from or arising out of representation of such Participant by any attorney in relation to such Participant's alleged use of JFM have been paid or will be paid out of the Settlement Payment and are the Participant's responsibility to pay, and that any Liens based on any legal expenses, bills, costs or contingency fee agreements incurred as a result of the Participant's alleged use of JFM will be satisfied by such Participant.

12.16   Each Participant will indemnify, repay and hold the Released Persons harmless from any and all such claims.

## ARTICLE XIII.     WARRANTY OF CAPACITY TO ENTER INTO THE AGREEMENT

### A.     BURG SIMPSON

13.1    Each Person duly appointed to and comprising BURG SIMPSON represents and warrants that such Person has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby.

13.2    The execution, delivery, and performance of this Agreement and the consummation by such Person of the actions contemplated hereby will be, upon delivery, duly and validly executed and delivered by such Person and will constitute its legal, valid, and binding obligation.

### B.     COMBE

13.3    COMBE represents and warrants that it has all requisite power and authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby.

13.4     The execution, delivery, and performance of this Agreement and the consummation by it of the actions contemplated hereby will be, upon delivery, duly and validly executed and delivered by COMBE and will constitute its legal, valid, and binding obligation.

### C.     Additional Agreement and Acknowledgements of Program Participants

13.5     Each Participant, on their own behalf and on behalf of their heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, successors and assigns, by executing the Release does agree to resolve their Claims with Defendants and to have granted their counsel the authority to resolve their Claims with Defendants in accordance with the terms of this Agreement.   Each Participant further represents and warrants that he has the sole right and exclusive authority to enter into this Agreement and to submit a Claim Package under it; that neither their Claim nor any of the claims, demands or obligations referred to in this Agreement have been sold, assigned, subrogated, transferred, or otherwise disposed of by them; and that they are the sole Person who may have a potential cause of action against Defendants relative to their Claim.

13.6     Each Participant shall further represent and warrant, and by executing the Release does represent and warrant, that no other Person or entity has any right, title or interest in their Claim, any of the demands, obligations, or causes of action referred to in this Agreement, or any Settlement Payment to them, and that there are no other Liens (except as may be disclosed in accordance with Article XII herein) other than the actual or potential attorneys liens of the Participant's counsel to the extent such attorneys liens have been perfected.

13.7     Private funding agreements are not Liens under this Agreement, and are not the responsibility of COMBE.   To the extent any Participant has received any funding or other consideration from any third party, including any private litigation funding, such Participant shall represent and warrant, and by executing the Release does represent and warrant, that such third party has no Lien or other claim that can be asserted against any of the Released Parties or the Qualified Settlement Fund or any portion thereof.   Each Participant shall agree, and by executing the Release does agree, that they will indicate on his or her Claim Form whether a bankruptcy action is currently pending in which he or she is seeking bankruptcy protection.

13.8     Each Participant, by participating in the Settlement as provided for herein, and their counsel acknowledge and agree that they are contractually bound by the terms of this Agreement.

13.9     Each Participant, by participating in the Settlement as provided herein, and their counsel, acknowledge and agree that they are waiving all rights to pursue their claims in court.

## ARTICLE XIV.     <u>MISCELLANEOUS</u>

### A.     Notice

14.1     Any notice, request, instruction or other document to be delivered pursuant to this Agreement shall be sent to the appropriate Party as follows, or their successors as otherwise instructed, by a notice delivered to the other Party pursuant to this Paragraph 14.1.  Notice may be provided by electronic mail, with a confirming copy sent within one day by regular United States Mail:

If to COMBE:

Stephen G. Strauss
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
sgstrauss@bryancave.com
Phone: 314-259-2444

If to BURG SIMPSON:

Kenneth Daly
BURG SIMPSON ELDREDGE HERSH JARDINE PC
201 East 5th Street, Suite 1340
Cincinnati, Ohio 45202
Phone: 513.852.5600
Fax: 513.852.5611
KDaly@burgsimpson.com

14.2     If the date or deadline for any notice, request, instruction or other document to be delivered or given pursuant to this Agreement falls on a day that is not a Business Day, such notice, request, instruction or other document shall be deemed due under this Agreement on the next following Business Day.

14.3     Any notice, request, instruction or other document to be given by any Party or any Settlement Administrator to any Participant or their counsel hereunder, shall be in writing and delivered in accordance with the terms of Paragraph 14.1, and such Party or Settlement Administrator may rely on the contact information last provided by the Program Participant or their counsel to such party or Settlement Administrator, as applicable, and no party nor any Settlement Administrator shall have any obligation to (but in its sole and absolute discretion may) take other steps to locate Participants or counsel as to whom notices, requests, instructions or other documents have been returned as undelivered or undeliverable. Each Participant and (if applicable) their counsel shall have the responsibility to keep the Settlement Administrator informed of the correct contact information for both such Participant and such counsel.

14.4     Any such notice, request, instruction or other document shall be deemed to have been given as of the date so transmitted by facsimile or electronic mail, on the next Business Day when sent by Federal Express, or five Business Days after the date so mailed, provided that if any such date on which any such notice or other communication shall be deemed to have been given is not a Business Day, then such notice or other communication shall be deemed to have been given as of the next following Business Day and, provided, further, that delivery otherwise shall be deemed to occur upon tender and rejection by the intended recipient.

**B.     Governing Law**

14.5     The provisions of this Agreement, appendices, and the individual Releases shall be interpreted in accordance with, and governed by, the laws of the State of New York (or United States federal law, to the extent applicable).

14.6    The Parties irrevocably submit to the jurisdiction of the Settlement Administrator, Mediator and the BURG-JFM Court for any suit, action, proceeding, or dispute arising out of or relating to the Program, the applicability or enforceability of the Program, or any document relating to the Program, including the Agreement, any of its Appendices, or the individual Releases.

## C.    Waiver of Inconsistent Provisions of Law; Severability

14.7    To the fullest extent permitted by applicable law, each Party waives any provision of law (including the common law), which renders any provision of this Agreement invalid, illegal or unenforceable in any respect.

14.8    Any provision of this Agreement which is prohibited or unenforceable to any extent or in any particular context shall be ineffective, but such ineffectiveness shall be limited as follows: (i) if such provision is prohibited or unenforceable only in or as it relates to a particular jurisdiction, such provision shall be ineffective only in or as it relates to (as the case may be) such jurisdiction and only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability in or as it relates to (as the case may be) such jurisdiction shall not otherwise invalidate or render unenforceable such provision (in such or any other jurisdiction); (ii) if (without limitation of, and after giving effect to, clause (i)) such provision is prohibited or unenforceable only in a particular context (including only as to a particular Person or Persons or under any particular circumstance or circumstances), such provision shall be ineffective, but only in such particular context; and (iii) without limitation of clauses (i) or (ii), such ineffectiveness shall not invalidate any other provision of this Agreement.  In any event, upon any such determination that any term or other provision is invalid, illegal or unenforceable, BURG SIMPSON and COMBE shall negotiate in good faith to modify this Agreement so as to effect the original intent of BURG SIMPSON and COMBE as closely as possible to the fullest extent permitted by applicable law. Nothing in this Paragraph 14.8 is intended to, or shall, limit (1) Section XIV(A) the intended effect of Paragraph XIII(B).

## D.    Good Faith Negotiations

14.9    BURG SIMPSON and COMBE each acknowledge that: the negotiations leading up to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed by and of each such executing Party's own free will; each such executing Party knows all of the relevant facts and its rights in connection therewith; and such Party affirms that it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any other Party or employee, agent, attorney or representative of any other Party.

14.10   The Parties hereby acknowledge that they entered into this Agreement to compromise permanently and settle the claims between any Program Participant, on the one hand, and the Released Persons, on the other hand, settled by the execution of this Agreement and the Participant's individual Release.

## E.    Construction

14.11   With regard to each and every term and condition of this Agreement, the Agreement has been negotiated, prepared and drafted by BURG SIMPSON and counsel for COMBE, and if at any time any Party desires or is required to interpret or construe any such term or condition or

any agreement or instrument subject hereto, no consideration shall be given to the issue of which Party hereto, or its counsel, actually prepared, drafted or requested any term or condition hereof.

14.12  The headings of the Sections, Paragraphs and subsections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.  Any reference to an Appendix shall be deemed to refer to the applicable Appendix attached hereto.  The words "include" and "including" and words of similar import when used in this Agreement or any Appendix hereto are not limiting and shall be construed to be followed by the words "without limitation," whether or not they are in fact followed by such words.  The definitions contained in this Agreement or any Appendix attached hereto are applicable to the singular as well as the plural forms of such terms.  Words of any gender (masculine, feminine, neuter) mean and include correlative words of the other genders.  As used herein or in any Appendix hereto, the term "dollars" and the symbol "$", shall mean United States dollars.  References herein to instruments or documents being submitted "by" any Person include (whether or not so specified) submission of the same on behalf of such Person by their counsel whether or not so specified, provided that if any particular instrument or document is required herein to be executed by a particular Person, it must (unless otherwise expressly specified herein) be so executed by such Person.  References herein to any particular Section (such as, for example, Paragraph 13.01) shall be deemed to refer to all sub-Sections of such Section (such as, for example, Paragraph 13.01(A), 13.01(B), etc.), all sub-sub-Sections of such sub-Sections, and so on; the corresponding principle applies to all references herein to any particular sub-Section, sub-sub-Section and so on.  The words "this Agreement", "herein", "hereof", "hereby", "hereunder" and words of similar import refer to this Agreement as a whole (together with any Appendices attached hereto) and not to any particular subdivision unless expressly so limited or the context requires otherwise.  Any reference herein to this Agreement shall be deemed to include this Agreement as it may be modified, varied, amended or supplemented from time to time.

### F.    No Third Party Beneficiaries; Assignment

14.13  No provision of this Agreement or any Appendix attached hereto is intended to create any third-party beneficiary hereto or thereto except as expressly set forth herein or therein.  For the avoidance of doubt, nothing in this Paragraph 14.13 limits or modifies the third-party beneficiary provisions of any Claim Form, Release or Stipulation of Dismissal.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned by any of BURG SIMPSON or any Program Participant who becomes a Party hereto without the prior written consent of COMBE.  Any assignment in violation of this Paragraph 14.13 shall be null and void ab initio.

14.14  No Participant shall have any right to institute any proceeding, judicial or otherwise, against any of Released Persons (including COMBE), any Special Master, or any Settlement Administrator to enforce, or otherwise with respect to, this Agreement.

14.15  If a Participant institutes any proceeding, judicial or otherwise, against any of Released Persons (including COMBE),  the Mediator, or any Settlement Administrator to enforce, or otherwise with respect to, this Agreement, that Participant shall be liable for payment of all costs and attorney's fees incurred by the responding party to that proceeding.

### G. Further Assurances

14.16   From time to time following the Execution Date, (i) each Party shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by any other Party, and otherwise reasonably cooperate with each other Party in a manner consistent with the terms of this Agreement as reasonably requested by each such other Party, and (ii) each Participant and their counsel, if any, shall take such reasonable actions consistent with the terms of this Agreement as may reasonably be requested by COMBE or by BURG SIMPSON, and otherwise reasonably cooperate with COMBE and BURG SIMPSON in a manner consistent with the terms of this Agreement as reasonably requested by COMBE or BURG SIMPSON, in the case of each of (i) and (ii) as may be reasonably necessary in order further to effectuate the intent and purposes of this Agreement and to carry out the terms hereof.

14.17   To the extent such actions shall be made by counsel, such actions shall be consistent with their duties to their clients who are parties to this Agreement.

### H. Specific Performance

14.18   It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach in addition to any other remedy available at law or in equity, without the necessity of demonstrating the inadequacy of money damages.

### I. Entire Agreement

14.19   This Agreement, including the appendices hereto and the Settlement Term Sheet regarding settlement of Just For Men claims between clients of  BURG SIMPSON and COMBE, constitutes the complete and entire agreement of the Parties with respect to the subject matter hereof.  This Agreement and the Settlement Term Sheet may not be modified, contradicted, added to or altered in any way by previous written or oral agreements, nor by any contemporaneous or subsequent oral agreements.  All antecedent or contemporaneous extrinsic representations, warranties or collateral provisions concerning the negotiation and preparation of the Agreement, the appendices hereto, and the Settlement Term Sheet are intended to be discharged and nullified.

14.20   In any dispute involving the Agreement or the Appendices hereto, no signatory shall introduce evidence of or seek to compel testimony concerning any oral or written communication made prior to the Effective Date with respect to the negotiation and preparation of the Agreement. Any change, modification, deletion or addition to this Agreement must be agreed to by all Parties and in writing and executed with the same formalities as this Agreement.

### J. Counterparts; Facsimile Signature

14.21   This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one and the same instrument.  It shall not be necessary for any counterpart to bear the signature of all parties hereto.

14.22   This Agreement and any amendments hereto, to the extent signed and delivered by means of a facsimile machine or electronic scan (including in the form of an Adobe Acrobat PDF

file format), shall be treated in all manner and respects as an original agreement and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

### K. Recitals

14.23   All recitals are incorporated herein as material provisions of this Agreement.

## ARTICLE XV.      <u>DEFINED TERMS</u>

"<u>Administrative Expenses</u>" shall mean the authorized fees, costs, and expenses incurred by the Administrator to implement and administer the Aggregate Settlement.  Litigation expenses, such as fees and costs incurred by Claimants' Counsel, shall be deducted from each Claimant's Gross Settlement Amount, but are not within the definition of Administrative Expenses for purposes of this MSA. All Administrative Expenses shall be paid from the QSF and shall be considered an expense of the Fund for tax purposes.

"<u>Aggregate Settlement</u>" shall mean this aggregate settlement of Just For Men-related claims brought—or that could have been brought—by or on behalf of the BURG SIMPSON Claimants listed in Appendix A and Appendix B, as described in this MSA.

"<u>Agreement</u>" or "<u>Master Settlement Agreement</u>" means this Master Settlement Agreement, including any and all Exhibits, Appendices, and Schedules attached hereto, as the same may be amended or modified from time to time in accordance with the terms hereof.

"<u>Settlement Term Sheet</u>" means the separate agreement between COMBE and BURG SIMPSON setting forth the specific claim process and calculation of the gross settlement amount.

"<u>Alleged Injury</u>" means an injury alleged by a Claimant to have been caused by JFM as set forth in a Complaint, Plaintiff Fact Sheet, or other Notice.

"<u>Authorization to Release Records and Other Information</u>" means the forms contained in the Plaintiff Fact Sheet.

"<u>Business Day</u>" means any day other than a Saturday, a Sunday, or a day on which banking institutions in New York City, New York, are authorized or obligated by law or executive order to remain closed.

"<u>Claimant Gross Settlement Amount</u>" shall mean the portion of the Maximum Aggregate Settlement Amount that is the total amount of monetary compensation assigned by Claimants' Counsel to a BURG SIMPSON Claimant.  The Claimant Gross Settlement Amount shall be the gross amount of monetary compensation offered to the Claimant.  A BURG SIMPSON Claimant who becomes a Non-Releasing Claimant shall not be eligible to receive the Claimant Gross Settlement Amount; rather, the Claimant Gross Settlement Amount assigned to a Non-Releasing Claimant shall be subtracted from the Maximum Aggregate Settlement Amount in arriving at the Final Aggregate Settlement Amount to be paid into the QSF by COMBE.  COMBE shall have no obligation to pay the Claimant Gross Settlement Amount for any Claimant who is a Non-Releasing Party.

"Claimant Net Settlement Amount" shall mean the amount payable to each Participating Claimant after deduction of administration expenses, liens, attorneys' fees, litigation expenses and other applicable and agreed upon deductions.

"Claimants" includes all BURG-JFM clients, each of whom are identified on Appendix A and Appendix B.

"Claim" and "Claims," as the context may require, means any actions, disputes, and claims asserted against Defendants that constitute: (i) part of the JFM Court cases; or (ii) part of any Other State Court Proceeding, in each case asserting an Alleged Injury resulting from the use of JFM, as well as (iii) claims asserted against Defendants by Qualifying Unfiled Claimants in a Notice of Intent to Opt In Form, or by individuals on Injury Tier lists or tolling agreements and addendums.

"Settlement Administrator" shall mean Archer Systems, who shall be retained to perform resolution duties as set forth in this MSA.

"Settlement Administrator Liaisons" has the meaning set forth in Paragraph 7.5.

"Claim Package" shall mean the Notice of Intent to Opt-In Form, the Release and the Stipulation of Dismissal with Prejudice (the latter of which is applicable only to filed claims.)

"Claim Package Deadline" has the meaning ascribed thereto in Article VI.

"CMO" means a Case Management Order entered by the BURG-JFM Court.

"CMS" has the meaning ascribed thereto in Paragraph 12.11.

"Defendants" means any and all COMBE defendants in any of the BURG-JFM Court cases.

"Eligible Enrollee" has the meaning ascribed thereto in Paragraph 2.2, i.e., all persons listed on Appendix A and Appendix B.

"Eligible Program Participant" has the meaning ascribed in the Recitals.

"Eligible Claim" has the meaning set forth in Article IV.

"Enrolled Program Participants" has the meaning ascribed thereto in Paragraphs 1.2 and 2.4.

"Execution Date" is the date this Agreement is signed by both Parties.

"Final Aggregate Settlement Amount" shall mean the full and total amount that COMBE is obligated to pay in consideration of this Aggregate Settlement and MSA. Payment of the Final Aggregate Settlement Amount into the QSF by COMBE shall fully satisfy its payment obligations with respect to this Aggregate Settlement and this MSA.

"Governmental Payors" has the meaning ascribed thereto in Paragraph 12(C).

"Interests" means a lawyer or law firm shall be deemed to have an "Interest" in a Person, or in a Claim of a Person, if the lawyer or law firm or any Person affiliated or related in any way to the lawyer or law firm:

- Has an engagement or retainer agreement with such Person

- Is listed as the counsel of record for such Person in filed pleadings

- Has entered an appearance for such Person

- Would benefit directly from any payment to settle any Claim of such Person Connected with JFM; or

- Otherwise has any financial interest in any Claim of such Person Connected with JFM

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

"Liability or Liabilities" means any and all debts, liabilities, covenants, promises, contracts, agreements and/or obligations of whatever kind, nature, description or basis, whether fixed, contingent or otherwise, whether presently known or unknown, developed or undeveloped, discovered or undiscovered, foreseen or unforeseen, matured or unmatured, or accrued or not accrued.

"Lien" means any lien, claim, mortgage, hypothecation, encumbrance, assignment, subrogation right, reimbursement claim, right of indemnity, right to payment, third-party interest or adverse claim of any nature whatsoever, pledge, security interests or charges of any kind, in each case whether statutory or otherwise, including any of the foregoing relating to medical treatment or lost wages, based on any legal expenses, bills, or costs that have been or may be asserted against Claimant's recovery herein by any health care provider, insurer, governmental entity, employer, any other Person operating under contract with any of the previously mentioned entities, or any other Person.

"BURG-JFM Court" has the meaning ascribed thereto in Recital 1.1.

"BURG-JFM Stipulation of Dismissal" has the meaning ascribed thereto in Paragraph 6.4(C).

"MMSEA" has the meaning ascribed thereto in Paragraph 7.11.

"JFM" means the Just For Men® product line.

"COMBE" refers to COMBE Incorporated, COMBE Products, Inc., COMBE International LLC and COMBE Laboratories, LLC, and all affiliates.

"Other Court Proceedings" has the meaning ascribed thereto in the Recitals.

"Party" means, individually, and "Parties" means, collectively, BURG SIMPSON, COMBE, Program Participants and their counsel.

"Person" means a natural person, corporation, limited liability company, other company, trust, joint venture, association, partnership, or other enterprise or entity, or the legal representative of any of the foregoing.

"Potential Third-Party Claimant" has the meaning ascribed thereto in Paragraph 12.4.

"QSF Administrator" refers to the Person who will function as the Qualified Settlement Fund Administrator.

"Qualified Settlement Fund" or "QSF" means the settlement fund established pursuant to Section IX(B) in which COMBE will deposit the Settlement Funds.

"Qualified Settlement Fund Agreement" means the agreement entered into between BURG SIMPSON and an appropriate financial agreement establishing and governing the Qualified Settlement Fund.

"Release" means the form of release of claims attached hereto as Appendix G or H, as applicable.

"Released Persons" means:

(A)    COMBE Incorporated, COMBE Products, Inc., COMBE International LLC and COMBE Laboratories, LLC, and all affiliates;

(B)    Any and all suppliers of materials, components, and services used in the manufacture of JFM, including the labeling and packaging thereof;

(C)    All distributors of JFM, including wholesale distributors, retail distributors, private label distributors, with respect to their distribution of JFM, and sale representatives;

(D)    Any direct or indirect parent, subsidiary, affiliate, shareholder, predecessor or successor of any of the Persons identified in sub-paragraphs (A)-(C) above.

(E)    Any other Person against whom any Claimant has asserted or could attempt to assert any claim, liability, or right to payment arising out of or related in any way to any Claimant's alleged use of JFM, whether as a joint tortfeasor or otherwise, under any theory of law or equity;

(F)    Any attorney, law firm, and its employees representing the Defendants or other Released Persons in regard to any Claimant's alleged use of JFM and any Claimant's asserted claims against the Defendants or other Released Persons;

(G)    Any insurer of any of the Persons identified in sub-paragraphs (A)-(F) above in its capacity as such (and any reinsurer of such insurer in its capacity as such); and

(H)     Any past, present or future officer, director, employee, partner, trustee, representative, agent, servant, attorney, or assignee of any of the Persons identified in sub-paragraphs (A)-(G) above in his or her capacity as such.

"Required Participation Thresholds" has the meaning ascribed thereto in Paragraph 5.3.

"Schedule of Program Deadlines" has the meaning ascribed thereto in Article III.

"Released Claims" means any and all claims, causes of action, demands, damages, costs, expenses, liabilities or other losses, whether in law or in equity, including assigned claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, existing now or arising in the future, arising out of or relating to the purchase, use, manufacture, sale, design, distribution, promotion, marketing, clinical investigation, testing, administration, regulatory approval, and/or labeling of JFM, alone or in combination with any other substance, or any other transaction between any Claimant and Released Persons relating to such Claimant's alleged use of JFM. The term "Released Claims" also includes any claims, causes of action, demands, damages, costs, expenses, liabilities or other losses, whether in law or in equity, including assigned claims, whether known or unknown, asserted or unasserted, regardless of the legal theory, existing now or arising in the future, arising directly or indirectly out of or in any way related to, this Release and the events surrounding its negotiation and execution. These "Released Claims" also include any cause of action that a Claimant may attempt to assert against any attorney, law firm, or its employees as it relates to their representation of any Defendant and/or other Released Person in connection with this settlement or the defense of COMBE and/or other Released Persons as that defense relates to JFM claims asserted by any plaintiff or claimant, including Claimant. These "Released Claims" include, without limitation and by way of example, all JFM-related claims for damages or remedies of whatever kind or character, known or unknown, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, or in any other manner, for:

(A)     Personal injury and/or bodily injury, damage, death, fear of disease or injury, including without limitation reduced future medical treatment options, mental or physical pain or suffering, emotional or mental harm, or loss of enjoyment of life;

(B)     Compensatory damages, punitive, exemplary, statutory and other multiple damages or penalties of any kind;

(C)     Loss of wages, income, earnings, and earning capacity, medical expenses, medical benefits, including rights to future Medicare or Medicaid benefits, doctor, hospital, nursing, and drug bills;

(D)     Loss of support, services, consortium, companionship, society or affection, or damage to familial relations, by spouses, former spouses, parents, children, other relatives or "significant others" of Claimants;

(E)     Consumer fraud, refunds, unfair business practices, deceptive trade practices, unfair and deceptive acts and practices, fraudulent inducement, and other similar claims whether arising under statute, regulation, or judicial decision;

(F)     Wrongful death and survival actions;

(G)     Medical screening and monitoring, injunctive and declaratory relief;

(H)     Economic or business losses or disgorgement of profit; and

(I)     Prejudgment or post-judgment interest.

"Settlement Funds" has the meaning ascribed thereto in Section IX(A).

"Stipulation of Dismissal" means, as the context may require, a JFM Court Stipulation of Dismissal, Stipulation of Termination of All Claims, or an applicable Stipulation of Dismissal for any other Court.

"Tax Expenses" has the meaning ascribed thereto in Paragraph 9.12.

"Taxes" has the meaning ascribed thereto in Paragraph 9.12.

"United States" as used herein means the fifty states of the United States of America, the District of Columbia, Puerto Rico, the Northern Mariana Islands, the U.S. Virgin Islands, American Samoa, Guam and the U.S. Minor Outlying Islands.  Any reference herein to a "state" shall be interpreted to refer to the states and territories as set forth in this definition.

"Walk Away Right" has the meaning ascribed thereto in Section V(B).

"BURG SIMPSON" has the meaning ascribed thereto in the Preamble.

## APPENDICES

| Appendix A | Retained by Mediator and Parties Only |
|---|---|
| **Appendix B** | Retained by Mediator and Parties Only |
| **Appendix C** | Notice of Intent to Opt In Form |
| **Appendix D** | Schedule of Program Deadlines |
| **Appendix E** | Intentionally Left Blank |
| **Appendix F** | Intentionally Left Blank |
| **Appendix G** | Release for All Participants |

IN WITNESS WHEREOF, BURG SIMPSON and COMBE have executed this Agreement effective as of the Execution Date.

| For | Claimants Counsel |
|---|---|
| COMBE Incorporated | BURG SIMPSON ELDREDGE HERSH JARDINE PC |
| Stephen G. Strauss, Esq. | Janet Abaray, Esq. |
| Date: March 27, 2021 | Date: March 29, 2021 |

**Retained by the Mediator and Parties Only**

**Retained by the Mediator and Parties Only**

| NOTICE OF INTENT TO OPT IN FORM FOR BURG-JFM RESOLUTION PROGRAM |
|---|

By timely submitting this form, I elect to participate in the BURG-JFM Settlement and I agree to be bound by the terms of the Master Settlement Agreement.

| | **I elect to participate in the BURG-JFM Resolution Program.** |
|---|---|

| CLAIMANT INFORMATION (JFM Product User) | | | |
|---|---|---|---|
| **Claimant Name** | Last | First | Middle |
| **Address** | Street | | |
| | City | State | Zip | Country |

| ATTORNEY INFORMATION (If Applicable) | | | |
|---|---|---|---|
| **Attorney Name** | Last **Janet** | First **Abaray** | Middle |
| **Firm Name** | **Burg Simpson Eldredge Hersh & Jardine, PC** | | |
| **Address** | Street **201 E. Fifth Street, Suite 1340** | | |
| | City **Cincinatti** | State **OH** | Zip **45202** | Country **USA** |
| **Telephone Number** | **(513) 852-5600** | Facsimile | **(513) 852-5611** |
| **Email** | **jabaray@burgsimpson.com** | | |

| SIGNATURE |
|---|
| IMPORTANT: The Plaintiff must personally sign. Attorneys may not sign on the Plaintiff's behalf. |

| **Signature** | [Enter] | **Date** | ____/____/_____ <br> (month)  (day)  (year) |
|---|---|---|---|
| **Printed Name** | First | MI | Last |

## Appendix D – Schedule of Program Deadlines

The following deadlines are established for determination of participation in the BURG-JFM Resolution Program, and the calculation of participation thresholds as applicable to Combe's Walk Away Rights as set forth in the Agreement.

| | |
|---|---|
| **Claim Package Deadline**<br><br>**120 days after the BURG-JFM Court's approval of the Agreement**<br><br>**(by 11:59 p.m. C.T.)** | Date by which all Eligible Enrollees must submit all Claim Package Materials as set forth in Article VI of the Agreement. |
| **Participation Threshold Determination Deadline**<br><br>**20 days after the Claim Package Deadline**<br><br>**(by 11:59 p.m. C.T.)** | Date by which the Settlement Administrator must make the Threshold Participation Determination as set forth in Article V of the Agreement.<br><br>Appeals of any disputes as to the Participation Threshold Determination shall be made in accordance with Paragraph 5.5. of the Agreement. |
| **Effective Date**<br><br>**10 days after the Participation Threshold Determination or resolution of any appeals of the Participation Threshold Determination, whichever is later.**<br><br>**(by 11:59 p.m. C.T.)** | Date by which Combe may exercise its termination right under the Agreement. If Combe's termination right under the Agreement expires without previously having been exercised, this date shall become the Effective Date of the Agreement. |

**APPENDIX E & F**

**Pages Intentionally Left Blank**

**APPENDIX G**

**CONFIDENTIAL**
**BURG-JFM SETTLEMENT**

# GENERAL RELEASE AND INDEMNITY

## A. RECITALS

r d r r d d r r d
r d r M r d r r
" " r " "

d d d r d r
d

r r d r d r d r r
d d r d r d d d r
r r r r r

## B. GENERAL RELEASE

d r d r r
M r r r r d r r d
r r d d d r rr d " " d r r
d r r d r r r d d d d r d d
d d r d r d
r r d r d r r r r d r r r d d
r r r r r r r r r r
d r r r d r d r r r r d r d d r
r d d r r r r r d
d d r r d d d r rr d " d r " r d
d d r r d d d
r r r r r d d
r M r d d d r d r d d
d r r d d d d d r
r d r r r r r d r r r
r d r r r r r
d d d r r d r r
r r r d r r d
d r r r r d r d
r r r d d d r r r r r
r d d r M r d r d r d r r r
d r d r d r d d d d r d
d r d r
d r r

## C. NO ADMISSION OF LIABILITY

r d r d d r d r d
r d d r d
d d d d d

**D. STIPULATION OF DISMISSAL, WITH PREJUDICE, AND COVENANT NOT TO SUE**

d d d r d
d r d r d
d d r
r d r r r rr d r r r d

**E. RELEASE AND STIPULATION OF DISMISSAL VOID IF SETTLEMENT DOES NOT PROCEED**

M d d d r
r r r d r d
d d d

**F. LIENS**

d r r r d d
r d r d d r r dr r r d
r r r r r r d r r r d
d d r r d
d d d r d r d r r
d d r d d r r r d
d r M d r d r r M r r r
r d r

d d d r r r
d r d r r r d
d d r r r r r M

**G. INDEMNIFICATION**

d d d d d d r r r d
r r d r r d r r r
r r r d d d r d r d
r r d r r r d r
d r M r d d d r d r
r d r r r M d r M d d r d d r d d
r d r r d r r r d M d r d
r r d

**H. CONFIDENTIALITY**

r d rd r r d r M
d r r r r d M
d r r r r r r r d r
d r r r r d M
r rr r r r r r r d d rd
r r d r r r r r d r
M r d d r r d
r r r r d r
d d r d r d d M d
d d r r d
r d r d d M d



1. **Social media, including Facebook, Twitter, Snapchat or any other social media platform.**
2. **On internet, blogs, media, web sites, or other postings.**
3. **On any television, radio or print news outlet.**
4. **With individuals outside the Claimant's immediate family or advisors.**



## I.   NON-DISPARAGEMENT



## J.   COMPETENCY AND AUTHORITY

## K.   APPLICABLE LAW



## L.   ENTIRE RELEASE AND MERGER